UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ROME RICHARD CHACON, | ) | |
| | ) | |
| Petitioner, | ) | 3:03-cv-0214-ECR-RAM |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| E.K. McDANIEL, *et al.*, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

This action is a petition for writ of habeas corpus (#54), pursuant to 28 U.S.C. § 2254, by Rome Richard Chacon, a Nevada prisoner represented by counsel. Before the Court are respondents' answer (docket #81) and petitioner's reply (docket #86).

**I. Procedural History**

The matters procedural history was set forth at length in the court' Order of February 12, 2010 (docket # 73) and it shall not be repeated here. After dismissal of grounds 1, 2, 3, 6, 7(A), and 8 as procedurally barred, respondents have filed their answer to the remaining ground. The court's determination of the merits of those grounds is set forth herein.

**II. Discussion**

   **A. Legal Standard**

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the standards of review that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct. 324 (2001). With respect to pure questions of fact, "a determination of a factual issue made by a

State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

If there is no reasoned decision upon which the Court can rely, then it must make an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

**B.     Analysis**

Ground 4

In this ground for relief, petitioner claims that insufficient evidence supported petitioner's convictions, resulting in a violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. Petitioner argues that the evidence against him was "only shaky identifications by store employees and testimony of acquaintances who testified against him to save another friend." Second Amended Petitioner (docket # 54) p. 15.

When considering the sufficiency of the evidence to convict, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-319 (1979). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16; *see also Chein v. Shumsky,* 373 F.3d 978, 983 (9th Cir. 2004).

In considering this claim the Nevada Supreme Court reviewed the record to determine that there had, in fact, been sufficient evidence presented at trial "to establish guilty beyond a reasonable doubt as determined by a rational trier of fact." Exhibit 38, pp. 3-4. The Nevada Supreme Court applied the standard established in *Jackson v. Virginia*, in its analysis of the evidence. The evidence found and cited by that court meets the elements of the crimes for which petitioner was convicted, including evidence of premeditation, willfulness and deliberation. For example, the court noted evidence that earlier in the evening of the killing, petitioner had a confrontation with the victim at a local 7-11 store, that shortly thereafter he returned to the store with

friends and confronted the victim stating, "You're dead." The court noted evidence that petitioner then chased the victim into the store, shouting, "I'm going to kill you," whereupon the victim was killed by means of stabbing.

This analysis of law and determination of fact is not unreasonable or contrary to clearly established federal law. Petitioner is not entitled to relief on this claim.

Ground 5

Next, petitioner alleges the jury instruction defining malice created an improper presumption, minimizing the state's burden of proof, in violation of his Fifth and Fourteenth Amendment rights.

In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *See Sandstrom v. Montana*, 442 U.S. 510, 520-521 (1979). Here, the jury was instructed as to the definition of malice, an essential element of murder as defined in NRS 200.010 and in conformance with the exact language of the Nevada statute defining malice, NRS 200.020. And, while subsequent consideration of the question may have caused the Nevada Supreme Court to suggest a possible modification to the jury instruction in order to provide the jury with a broader option for the presumption of malice, in that same case the court reiterated the propriety of the instruction in question here when given in conjunction with instruction on "the presumption of innocence and the State's burden to prove beyond a reasonable doubt every element of the crime charged." *Cordova v. State,* 116 Nev. 664, 666, 6 P.3d 481, 487 (Nev. 2000). The jury instructions provided in petitioner's trial included the requisite presumption of innocence and burden of proof instruction. Exhibit 18, Instruction 28.

Despite petitioner's arguments, this court does not conclude that the jury instruction was not in conformance with NRS 47.230, which controls when and how a judge shall instruct the jury on presumptions in a criminal case. That statute prohibits a judge from directing a jury to find a presumed fact against the accused. The judge in this case did not do so. Rather the judge instructed the jury that if it found the existence of an abandoned and malignant heart or the complete absence of

considerable provocation, then it should presume malice, if express malice was not present.  There is nothing in the record to allow the court to conclude that the jury presumed malice.  Its conclusion that petitioner was guilty of first degree murder, rather than a lesser degree, provides strong evidence that the jury found the existence of actual malice, because it also found petitioner acted with deliberation, willfulness and premeditation.

Petitioner has not demonstrated that the Nevada Supreme Court's determination of this claim for relief was incorrect within the parameters of 28 U.S.C. § 2254.  The jury instructions informed the jury of the state's burden of proof and conformed to the statute defining malice.  This claim shall be denied.

Ground 7(B)

Ground 7 of the Second Amendment Petition raised claims of ineffective assistance of counsel in violation of petitioner's rights as guaranteed by the Sixth Amendment.  In part B, petitioner claims counsel was ineffective because he "failed to file a motion to suppress the 7-11 surveillance videotape."

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective counsel are to be measured.  In *Strickland*, the Court propounded a two prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Regarding the first prong -- commonly known as the "effectiveness prong" -- the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution.  *Id*.

5

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. (citation omitted).

In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id*. at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id*. at 691-94. The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Petitioner relates that counsel made several attempts to obtain the 7-11 Store's video surveillance tape, but he was repeatedly rebuffed by the prosecution. He also relates that despite the issuance on September 10, 1992, of an ex parte order directing the district attorney to arrange for viewing of the tape by the defendant and his counsel no later than 2:00 p.m. on the date of the order, he did not see the tape until three days into trial. Petitioner describes the tape as exculpatory and acknowledges that counsel made an oral motion to suppress the video when it became apparent the state intended to present such a tape at trial. In light of these assertions, his present contention that counsel should have "filed a motion to suppress" is nonsensical. Counsel sought suppression of the tape, as petitioner contends he should. However, if the tape was exculpatory, it admittance at trial would have benefitted petitioner. This contradictory claim fails as plaintiff has demonstrated neither deficient performance by counsel, nor prejudice arising as a result. The Nevada Supreme Court properly decided this claim for relief.

Ground 7(C)

Petitioner also complains he received ineffective assistance of counsel when his case was reassigned to a deputy public defender unfamiliar with the case and the trial was delayed as a

6

result, causing a violation of his right to a speedy trial.

Petitioner notes that at the time of substitution of his defense counsel, he opposed the new counsel's motion to continue the trial date, and presented argument in support of his position. Petitioner cites to the court's minutes, but explains he has been unable to locate the court reporter or obtain a transcript of the actual proceedings. He asserts that the new trial date was "far outside the sixty day rule," and that counsel's failure to object to the extended delay was below the minimum standard of reasonably effective assistance of counsel, as it "could serve no strategic nor tactical purpose that would assist Mr. Chacon. He claims the prejudice he suffered was that "he was denied his right to have competent counsel represent his interests during all stages of the proceedings."

The Nevada Supreme Court denied this claim for relief finding that the trial court's decision to continue the trial was not an abuse of discretion and that petitioner "failed to show how the defense was prejudiced." Exhibit 92, pp. 4-5. This court agrees. Petitioner has not demonstrated that counsel's continuance of the trial date to permit himself the opportunity to be properly prepared to represent his client would result in prejudice or that such action raises a reasonable probability that the outcome would have been different had counsel acted differently.

Ground 7(C) is without merit and petitioner has not shown that the state court's decision in this regard was an unreasonable determination of the facts or was contrary to or an unreasonable application of the *Strickland* standard.

Ground 9

Petitioner claims the state withheld evidence from the defense, violating his right to due process as guaranteed by the Fourteenth Amendment. He contends the state improperly withheld the 7-11 video surveillance tape despite the defense's repeated requests for its release.

The facts related to support those claims duplicate those presented in support of Ground 7(B) , *supra.* When the State announced its intention to present the video tape, some three days into trial.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the

suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also Strickler v. Greene*, 527 U.S. 263, 280-281 (1999). The Supreme Court has stated that the duty to disclose such evidence is applicable even though there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*., at 682; *see also Kyles v. Whitley,* 514 U.S. 419, 433-434 (1995). To constitute a *Brady* violation, the Supreme Court has set forth a three-part test: 1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) "[T]hat evidence must have been suppressed by the State, either willfully or inadvertently"; and 3) "[P]rejudice must have ensued." *Strickler*, 527 U.S. at 218-282.

    In considering the evidence in question, respondents note that according to the trial judge, the tape was unclear, ran too fast and did not show much. Exhibit 16, pp. 247-251. In fact, the trial transcript indicates that defense counsel had previously viewed the tape on equipment that was ineffective, but that the state intended to show the video tape on the 7-11 Store's equipment, which they hoped would provide a clearer view. *Id.* Defense counsel moved to be allowed to view the tape on the different equipment before it was shown to the jury. The motion was granted. Counsel's motion for a continuance was denied. *Id.* The transcript does not indicate what the tape showed when projected with the store's equipment, apart from the prosecutor's representation that the film was only "a little bit clearer." *Id.,* pp. 249-250.

    Petitioner contends the tape was exculpatory, but fails to explain how so, except to speculate that had he received the tape sooner, it could have been used strategically. His bald assertion, without specifics, is not persuasive. There is nothing in the record to show that the tape provided any evidence that would have allowed petitioner to impeach various witnesses. He provides no facts, purportedly provided in the tape, which allow for impeachment or for positive arguments that he is innocent. Moreover, he has failed to show how the presentation of the video

8

1  tape on the store's equipment caused him prejudice, i.e., that the outcome would have been different
2  if it had been viewed as played on the store equipment prior to trial.
3        The Nevada Supreme Court denied relief to petitioner on this claim on appeal from
4  post conviction, noting petitioner's failure to specify what grounds would support such a motion.
5  The court also noted that the various eyewitnesses testified about what occurred in the store and also
6  that petitioner had told various persons that he had stabbed the victim, thereby concluding that the
7  overwhelming evidence of guilt foreclosed any reasonable probability that the outcome of the trial
8  would have been different . Exhibit 92, p. 3. The Nevada Supreme Court's analysis was not in
9  error, either in its determination of the facts or its application of federal law. Ground 9 shall be
10 denied.
11       Ground 10
12       In his final ground for relief, petitioner argues his right to due process was violated by
13 the state court's failure to "meaningfully correct the excessive delay in the appellate process" when it
14 allowed his state post-conviction petition to languish for over six years and in failing to appoint post-
15 conviction counsel.
16       Petitioner argues that because the state retains the right to review post-conviction
17 litigation before the petition may proceed to federal court, a petitioner is entitled to due process by
18 way of a prompt review of the merits of the claims presented.
19       Federal law requires that a petitioner exhaust his state court remedies before bringing
20 his federal constitutional claims for review to federal court.  *Rose v. Lundy*, 455 U.S. 509 (1982);
21 28 U.S.C. § 2254(b). While this is described as a matter of comity, it is not the state law that
22 mandates this exhaustion. Secondly, it is also federal law that relief on a petition brought pursuant to
23 28 U.S.C. § 2254 cannot be based upon the ineffective assistance of counsel in state or federal post
24 conviction proceedings. 28 U.S.C. § 2254(I). Thus, it seems axiomatic that the absence of counsel
25 in state post-conviction proceedings cannot be grounds for relief. Moreover, he has not shown that
26 the delay prejudiced him, in that he is not entitled to relief on his petition.

This claim was denied by the Nevada Supreme Court, finding that the excessive delay did not "impede Chacon from raising his present claims in a timely" manner.  Exhibit 111, p. 3.

Petitioner has not shown that the state court's decision on this claim was incorrect. He is not entitled to relief from this court.

### III.  Certificate of Appealability

In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Second Amended Petition for Writ of Habeas Corpus (#54) is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability is warranted.

The Clerk shall enter judgment accordingly.

DATED this 19th day of August, 2010.

*Edward C. Reed*
UNITED STATES DISTRICT JUDGE